RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 18a0279p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

USAMA JAMIL HAMAMA, et al.,

*Petitioners-Appellees*,

*v.*

REBECCA ADDUCCI, et al.,

*Respondents-Appellants*.

Nos. 17-2171/18-1233

———————————

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:17-cv-11910—Mark A. Goldsmith, District Judge.

Argued: April 25, 2018

Decided and Filed: December 20, 2018[*]

Before: BATCHELDER, SUTTON, and WHITE, Circuit Judges.

———————————

## COUNSEL

**ARGUED:** Scott G. Stewart, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellants. Lee Gelernt, AMERICAN CIVIL LIBERTIES UNION FOUNDATION IMMIGRANTS' RIGHTS PROJECT, New York, New York, Margo Schlanger, Ann Arbor, Michigan, for Appellees. **ON BRIEF:** Scott G. Stewart, Michael A. Celone, William C. Silvis, Sarah Stevens Wilson, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellants. Lee Gelernt, Judy Rabinovitz, AMERICAN CIVIL LIBERTIES UNION FOUNDATION IMMIGRANTS' RIGHTS PROJECT, New York, New York, Margo Schlanger, Samuel R. Bagenstos, Ann Arbor, Michigan, Michael J. Steinberg, Miriam J. Aukerman, AMERICAN CIVIL LIBERTIES UNION FUND OF MICHIGAN, Detroit, Michigan, Nadine Yousif, Nora Youkhana, CODE LEGAL AID INC., Madison Heights, Michigan, Kimberly L.

———————————

[*]This decision was originally filed as an unpublished opinion on December 20, 2018. The court has now designated the opinion for full-text publication. Judge White's unpublished dissent is replaced with this published dissent.

Scott, Wendolyn Wrosch Richards, MILLER, CANFIELD, PADDOCK & STONE, PLC, Ann Arbor, Michigan, William W. Swor, WILLIAM W. SWOR & ASSOCIATES, Detroit, Michigan, for Appellees.  Cynthia M. Nunez, AMERICAN IMMIGRATION LAWYERS ASSOCIATION, Washington, D.C., Carl M. Levin, Gabriel E. Bedoya, HONIGMAN MILLER SCHWARTZ AND COHN LLP, Detroit, Michigan, Elisa J. Lintemuth, DYKEMA GOSSETT PLLC, Grand Rapids, Michigan, Jason P. Steed, KILPATRICK TOWNSEND & STOCKTON LLP, Dallas, Texas, Amy G. Doehring, MCDERMOTT WILL & EMERY LLP, Chicago, Illinois, Noah A. Levine, Jamie S. Dycus, WILMER CUTLER PICKERING HALE AND DORR LLP, New York, New York, for Amici Curiae in 17-2171.  Gabriel E. Bedoya, HONIGMAN MILLER SCHWARTZ AND COHN LLP, Detroit, Michigan, Jill M. Wheaton, DYKEMA GOSSETT PLLC, Ann Arbor, Michigan, Nareeneh Sohbatian, WINSTON & STRAWN LLP, Los Angeles, California, for Amici Curiae in 18-1233.

BATCHELDER, J., delivered the opinion of the court in which SUTTON, J., joined. WHITE, J. (pp. 16–26), delivered a separate dissenting opinion.

———————————

**OPINION**

———————————

ALICE M. BATCHELDER, Circuit Judge.  These consolidated appeals arise from the government's efforts to execute long-standing final removal orders of Iraqi nationals that the United States had, for many years, been unable to execute.  The district court entered two preliminary injunctions: one to halt the removal of Iraqi nationals (removal-based claims) and one to order bond hearings for those Iraqi nationals who continued to be detained after the district court halted their removals (detention-based claims).  Because we find the district court lacked the jurisdiction to enter both the removal-based and the detention-based claims, we **VACATE** the preliminary injunctions for both the removal-based and the detention-based claims, and we **REMAND** with directions to dismiss the removal-based claims for lack of jurisdiction, and for further proceedings consistent with this opinion.[1]

---

[1]Petitioners have filed a Motion for Judicial Notice, requesting that we take judicial notice of "certain adjudicated outcomes in Petitioners' individual immigration cases," as compiled by Ms. Margo Schlanger, counsel for Petitioners.  We DENY the motion.  Federal Rule of Evidence 201(b) permits a court to take judicial notice of facts "not subject to reasonable dispute."  In *United States v. Bonds*, 12 F.3d 540, 553 (6th Cir. 1993), we refused to take judicial notice of a National Research Committee report because there was considerable dispute over the significance of its contents.  Similarly here, there are questions about whether the declaration, which is a compilation of data that has been selected and then analyzed by class counsel, "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b)(2).

I.

A.

Petitioners-Appellees ("Petitioners") are Iraqi nationals, the vast majority of whom were ordered removed to Iraq years (and some decades) ago because of criminal offenses they committed in the United States. For many years Iraq refused to repatriate Iraqi nationals who, like Petitioners, had been ordered removed from the United States.[2] Because the United States was unable to execute the removal of Iraqi nationals to Iraq, Petitioners remained in the United States under orders of supervision by United States Immigration and Customs Enforcement ("ICE"). Their removal orders remained final and active.

Things changed in 2017. Iraq began to cooperate with repatriation efforts and the removal of Iraqi nationals to Iraq quickly resumed. Iraqi nationals such as Petitioners, with final orders of removal that had been long-stalled, were faced with an unpleasant reality—their removals were now imminent. Though many of these Iraqi nationals had come to expect that the execution of their removals would never materialize, they had been living in the United States on borrowed time. Iraq's agreement to cooperate with repatriation efforts meant that time was up.

The reality of Iraq's resuming cooperation in repatriating its nationals hit in April 2017 when ICE conducted its first removal by charter flight to Iraq since 2010, removing eight Iraqi nationals and scheduling a second charter for late June 2017. In preparation for the second charter, ICE arrested and held in custody more than 200 Iraqi nationals in mid-June 2017.[3] These arrests prompted the cases now before us.

---

[2]Iraq declined to issue requisite travel documents to aid the United States in repatriating Iraqi citizens and would accept only Iraqi nationals with final orders of removal who had unexpired passports and were returning on commercial flights.

[3]The vast majority of arrests took place in Detroit. ICE arrested approximately 114 Detroit-based Iraqi nationals and transferred them to federal facilities in Michigan, Ohio, Louisiana, and Arizona to await removal to Iraq. ICE also arrested and detained approximately 85 Iraqi nationals from Tennessee, New Mexico, and California, who were subsequently transferred to facilities in Alabama, Louisiana, Tennessee, and Texas.

B.

On June 15, 2017, Petitioners filed a putative class action habeas petition in the United States District Court for the Eastern District of Michigan on behalf of "all Iraqi nationals in the United States with final orders of removal, who have been, or will be, arrested and detained by ICE as a result of Iraq's recent decision to issue travel documents to facilitate U.S. removal." Petitioners also filed a motion for a temporary restraining order and/or stay of removal, asking the district court to halt their removal to Iraq and to hear the Petitioners' arguments of allegedly changed country conditions.

Petitioners' choice to file this action before the district court was undoubtedly outside the norm for removal proceedings, over which immigration courts hold exclusive jurisdiction. *See* 8 U.S.C. § 1252(g) ("[N]o court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien . . . ."). So before making any determination on the preliminary injunction, the district court had to determine whether it had jurisdiction to hear Petitioners' case. Pending its jurisdictional decision, the district court stayed the purported class's final removal orders—first in the Eastern District of Michigan and then nationwide.

The district court eventually concluded that it had jurisdiction to hear Petitioners' claims. Acknowledging that "8 U.S.C. § 1252(g) applies to divest this Court of subject-matter jurisdiction," the district court found that the circumstances in the case presented an as-applied constitutional violation of the Suspension Clause, allowing it to exercise jurisdiction.

Specifically, the district court explained that "[t]he mechanism provided by [Congress through] the REAL ID Act for judicial review of removal orders—filing motions to reopen proceedings in immigration courts and subsequent review in the courts of appeals—does not take into account the compelling confluence of grave real-world circumstances present in [this] case." The district court, in July 2017, granted Petitioners a nationwide preliminary injunction preventing the government from enforcing final removal orders against Iraqi nationals and

requiring the government to produce extensive discovery.  The government appealed the preliminary injunction on September 21, 2017.  That appeal is before us as Case No. 17-2171.

The second appeal stems from Petitioners' continued detention during the pendency of these cases.  The government has kept Petitioners detained, as relevant to the appeal before us, under the authority provided in two statutes. The first grants authority to detain aliens who are subject to final removal orders because they have not moved to reopen their immigration proceedings or have not prevailed in a motion to reopen their proceedings.  *See* 8 U.S.C. § 1231(a)(6). The second grants authority to detain certain aliens who have succeeded in having their removal orders reopened (and are not subject to a final removal order and detention authority under § 1231) but have criminal convictions or qualifying terrorist activities that render them subject to mandatory detention pending a decision on removal.  *See* 8 U.S.C. § 1226(c)(1).[4]

In October 2017, nearly three months after the district court granted Petitioners' removal-based preliminary injunction, Petitioners amended their habeas petition and class action complaint to add claims challenging their continued detentions under 8 U.S.C. §§ 1231 and 1226(c) while the courts resolve their removal-based claims based on due process principles and the Immigration and Nationality Act, 8 U.S.C. § 1101, et seq.[5]  Petitioners moved for a preliminary injunction seeking relief on these detention-based claims, which the district court granted, ordering an injunction requiring bond hearings on a class-wide basis.  The government appealed the district court's preliminary injunction on March 2, 2018.  That appeal is before us as Case No. 18-1233.

---

[4]The government notes that this detention is a direct result of the district court's stay of removal of Petitioners.  Without the stay, Petitioners would have been removed to Iraq.

[5]Petitioners added count four: "prohibition on immigration detention where removal is not significantly likely in the reasonably foreseeable future"; count five: "prohibition on immigration detention without an individualized hearing on danger and flight risk"; count six: "unlawful application of mandatory detention to class members whose motions to reopen have been granted"; and count seven: "relief for class members who have been deprived of timely access to the files needed to file their motions to reopen."

II.

We review de novo the district court's determination of subject-matter jurisdiction.  *Pak v. Reno*, 196 F.3d 666, 669 (6th Cir. 1999).

A.

We begin with the removal-based claims.  "Federal courts are not courts of general jurisdiction; they have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress . . . ." *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986) (citing *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 173-80 (1803)).  Congress enacted 8 U.S.C. § 1252(g) to limit the jurisdiction of federal courts.  Section 1252(g)[6] provides, in full:

> (g) Exclusive jurisdiction
>
> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g).  This provision applies "to three discrete actions that the Attorney General may take: [the] 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'"  *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999).

The district court found that the "natural reading of § 1252(g)" and "the Sixth Circuit's straightforward view expressed in *Elgharib* [*v. Napolitano*, 600 F.3d 597 (6th Cir. 2010)]," divested it of subject-matter jurisdiction, unless to do so would violate the Constitution.  The government argues that the district court got this right; Petitioners assert that the district court erred by finding that § 1252(g) divested it of jurisdiction.

---

[6]Congress amended § 1252(g) in 2005 to its current form with the enactment of the REAL ID Act.  The Act, among other things, "sought to channel judicial review of an alien's claims related to his or her final order of removal through a petition for review at the court of appeals." *Elgharib v. Napolitano*, 600 F.3d 597, 600 (6th Cir. 2010); *see also Almuhtaseb v. Gonzales*, 453 F.3d 743, 747 (6th Cir. 2006) ("The REAL ID Act renders petitions for review the exclusive means for judicial review for all orders of removal, except for limited habeas review of expedited removal orders.").

Under a plain reading of the text of the statute, the Attorney General's enforcement of long-standing removal orders falls squarely under the Attorney General's decision to execute removal orders and is not subject to judicial review. *See Reno*, 525 U.S. at 483; *Elgharib*, 600 F.3d at 601-03; *cf. Silva v. United States*, 866 F.3d 938, 941 (8th Cir. 2017) (finding no jurisdiction over tort claims stemming from mistaken execution of a removal order during a stay of removal because "[t]he limitation on jurisdiction . . . applies to '*any* cause or claim by or on behalf of any alien' that arises from a decision to execute a removal order") (citation omitted). The district court did not err by finding that § 1252(g) divested it of subject-matter jurisdiction.

But our agreement with the district court's reasoning ends there. After correctly concluding that § 1252(g) divested it of jurisdiction as a matter of federal statutory law, the court then erred by finding that it could still exercise jurisdiction because "extraordinary circumstances" created an as-applied constitutional violation of the Suspension Clause. This is a broad, novel, and incorrect application of the Suspension Clause.

There are at least two reasons why § 1252(g)'s jurisdictional limitations do not violate the Suspension Clause. First, because Petitioners are not seeking habeas relief in the first instance. And second, because even if they were, Congress's petition-for-review process provides an adequate alternative to an action in habeas as applied to Petitioners.

To begin with, the type of relief Petitioners seek is not protected by the Suspension Clause. The Clause states that "[t]he Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. Const. art. I, § 9, cl. 2. "At its historical core," the writ "served as a means of reviewing the legality of Executive detention." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001); *see also Munaf v. Geren*, 553 U.S. 674, 693 (2008). The traditional remedy provided by habeas is "removing the injury of unjust and illegal confinement." 3 William Blackstone, *Commentaries on the Laws of England* 137 (1768); *see also Munaf*, 553 U.S. at 693 (citing *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) ("[T]he traditional function of the writ is to secure release from illegal custody.")).

The government argues that because Petitioners' removal-based claims fail to seek relief that is traditionally cognizable in habeas, the Suspension Clause is not triggered. We agree.

As the government states, "[t]he claims and relief requested here are fundamentally different from a traditional habeas claim." Petitioners' removal-based claims did not challenge any detention and did not seek release from custody. Rather, they sought "a stay of removal until they . . . had a reasonable period of time to locate immigration counsel, file a motion to reopen in the appropriate administrative immigration forum, and have that motion adjudicated to completion in the administrative system, with time to file a petition for review and request a stay of removal in a federal court of appeals." "[T]he nature of the relief sought by the habeas petitioners suggests that habeas is not appropriate in these cases" because "the last thing petitioners want is simple release" but instead a "court order requiring the United States to shelter them." *Munaf*, 553 U.S. at 693-94. And the relief ordered by the district court—a stay of removal—did not result in Petitioners' release from custody.[7] Because the common-law writ could not have granted Petitioners' requested relief, the Suspension Clause is not triggered here.

The dissent claims we misrepresent *St. Cyr* because *St. Cyr* requires some "judicial intervention in deportation cases." 533 U.S. at 300. True enough, the Supreme Court invoked the Suspension Clause in the face of a removal-based challenge in *St. Cyr*. *See* 533 U.S. at 304–05. But the relief St. Cyr sought is qualitatively different from what Petitioners seek here. St. Cyr sought cancellation of removal, which would have entitled him to be *released* into and remain in the United States. *See id.* at 297, 314–15; Immigration and Nationality Act of 1952, ch. 477, § 212(c), 66 Stat. 182, 187 (repealed 1996); 8 U.S.C. § 1229b. Petitioners here seek withholding of removal, which would entitle them *not* to be released into Iraq. A petitioner who succeeds in showing that he may suffer torture in the receiving country has no right to stay in the United States; the government may remove him to some other (safe) place. *See* 8 C.F.R. § 208.16(c)(4), (f).

That difference means this case is less like *St. Cyr* and more like *Munaf*, which concerned American citizens seized in Iraq and held in U.S. custody there. *Munaf*, 553 U.S. at 680–85.

---

[7]As the government notes, other aspects of Petitioners' request for injunctive relief and the district court's preliminary injunction underscore the unconventional nature of Petitioners' purported habeas claims. Petitioners have not exhausted available remedies; Petitioners' claim is based on allegedly changed factual circumstances, which is not a core use of habeas; and Petitioners seek class-wide relief, which falls outside the traditional use of habeas.

The Supreme Court concluded that those petitioners failed to state a claim for habeas relief because they were seeking only to avoid release into Iraq. *Id.* at 692. The dissent states that *Munaf* is inapposite because, unlike in *Munaf*, in the instant case Petitioners are not subject to an extradition request and are not seeking habeas to shelter them from government prosecution. But the reasoning in *Munaf* was not restricted to the particular relief those petitioners were seeking. The Court reviewed the history of habeas, noted it "is at its core a remedy for unlawful executive detention," and because what petitioners were seeking did not fit into the "core remedy," determined the remedy those petitioners' claimed was not cognizable in habeas. 553 U.S at 693. Similarly, Petitioners are not seeking relief that fits in the "core remedy" of habeas.

Even if the relief Petitioners seek was available under the common-law writ, Petitioners' Suspension Clause claim would fail for the independent reason that Congress has provided an adequate alternative as applied to them. Congress does not suspend the writ when it strips the courts of habeas jurisdiction so long as it provides a substitute that is adequate and effective to test the legality of a person's detention. *Swain v. Pressley*, 430 U.S. 372, 381 (1977); *see also Felker v. Turpin*, 518 U.S. 651, 664-65 (1996). When Congress stripped the courts of jurisdiction to grant habeas relief in § 1252(g), it provided aliens with an alternative method to challenge the legality of removal orders: a motion to reopen followed by a petition for review filed in a court of appeals. *See* 8 U.S.C. § 1252(a)(5), (2)(D). Because this process provides an alien with the same scope of relief as habeas, the REAL ID Act does not violate the Suspension Clause. *Muka v. Baker*, 559 F.3d 480, 485 (6th Cir. 2009); *see also Luna v. Holder*, 637 F.3d 85, 95 (2d Cir. 2011); *Mohamed v. Gonzales*, 477 F.3d 522, 526 (8th Cir. 2007); *Puri v. Gonzales*, 464 F.3d 1038, 1042 (9th Cir. 2006); *Alexandre v. U.S. Attorney Gen.*, 452 F.3d 1204, 1205–06 (11th Cir. 2006).

Petitioners respond that, while the petition-for-review process may be a facially adequate alternative to habeas, a confluence of circumstances made that alternative constitutionally inadequate as applied to them. They are wrong. Petitioners had years to file their motions to reopen; they cannot now argue that the system gave them too little time. The administrative scheme established by Congress even provided multiple avenues to stay removal while pursuing relief. Petitioners have not shown any constitutional inadequacy in this process.

The district court did not have jurisdiction over Petitioners' removal-based claims, and we therefore vacate the injunction.

B.

We proceed now to the detention-based claims. The government and Petitioners agree that the district court had jurisdiction over the detention-based claims and that this jurisdiction is an independent consideration that is not tied to whether the district court has jurisdiction over the removal-based claims. We agree the district court's jurisdiction over the detention-based claims is independent of its jurisdiction over the removal-based claims. Nevertheless, we find that 8 U.S.C. § 1252(f)(1) bars the district court from entering class-wide injunctive relief for the detention-based claims. Section 1252(f)(1) reads:

> (f) Limit on injunctive relief
>
> (1) In general
>
> Regardless of the nature of the action or claim or of the identity of the party or parties bringing the action, no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of the provisions of [8 U.S.C. §§ 1221-31] . . . other than with respect to the application of such provisions to an individual alien against whom proceedings under such part have been initiated.

Interpreting this statute in *Reno*, the Supreme Court held that, "By its plain terms, and even by its title, that provision is nothing more or less than a limit on injunctive relief. It prohibits federal courts from granting classwide injunctive relief against the operation of §§ 1221-31, but specifies that this ban does not extend to individual cases." 525 U.S. at 481-82. In our view, *Reno* unambiguously strips federal courts of jurisdiction to enter class-wide injunctive relief for the detention-based claims. Petitioners disagree and raise three objections. We address each of these objections below.

*Objection #1: The plain text of the statute does not bar class actions*. According to Petitioners, "§ 1252(f)'s language bars injunctions that purport to protect persons *not yet in immigration proceedings*" (emphasis added). Petitioners come to this conclusion by focusing on the language in § 1252(f)(1) that reads "other than . . . an . . . alien . . . against whom *proceedings under such part have been initiated*" (emphasis added). According to Petitioners, § 1252(f)(1) *is*

a bar on injunctions *but* there is a carveout for those aliens who are already in immigration proceedings. Since everyone in the current litigation is currently in immigration proceedings, Petitioners argue that § 1252(f)(1) is inapplicable to the current class action litigation.

This argument does violence to the text of the statute. The only way Petitioners can come to the conclusion they do is by reading out the word "individual" before "alien" in the last sentence of the statute. In other words, they argue that a class action is not barred by this statute because all the members of the proposed subclasses are already in immigration proceedings. But although Petitioners are correct that the statute provides a carveout for those already in immigration proceedings, that carveout applies only to an "individual." There is no way to square the concept of a class action lawsuit with the wording "individual" in the statute. "It is 'a cardinal principle of statutory construction' that 'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'" *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (citation omitted). The only way to permit a class action or class-based lawsuit without running awry of § 1252(f)(1) would be if the statute, instead of using the phrase "an individual alien," used a phrase such as "aliens" or "any alien." By giving no meaning to the word "individual," Petitioners are arguing for a version of the statute that Congress simply did not write.

Indeed, elsewhere in the statute Congress made it very clear that it knew how to distinguish when it wanted a statute to apply not to "individual" aliens, but rather to "any alien." For example, the phrase "any alien" appears in the very next subsection of the statute— "Notwithstanding any other provision of law, no court shall enjoin the removal of *any alien . . .*" § 1252(f)(2) (emphasis added)—as well as in other subsections of the statute. *See, e.g.,* § 1252(e)(4)(B) ("*Any alien* who is provided a hearing . . .") (emphasis added); § 1252(g) ("[N]o court shall have jurisdiction to hear any cause or claim by or on behalf of *any alien . . .* or execute removal orders against *any alien* under this chapter.") (emphasis added).

Petitioners argue that if Congress had wanted to ban class certification under Rule 23 it would have just said that. In fact, it did elsewhere in the statute. *See* § 1252(e)(1)(B) ("[N]o court may . . . certify a class under Rule 23 . . . ."). But there is a big difference between barring the certification of a class under Rule 23 and barring all injunctive relief. The former bars a

*class action* regarding *anything*; the latter only bars *injunctive relief* for anyone other than *individuals*.

Petitioners next argue that "[t]he use of the term 'individual alien' does not withdraw a court's power to grant class relief." In support of their position, Petitioners cite *Califano v. Yamasaki*, 442 U.S. 682 (1979), which says, "The fact that the statute speaks in terms of an action brought by 'any individual' or that it contemplates case-by-case adjudication does not indicate that the usual Rule providing for class actions is not controlling, where under that Rule certification of a class action otherwise is permissible. Indeed, a wide variety of federal jurisdictional provisions speak in terms of individual plaintiffs, but class relief has never been thought to be unavailable under them." *Id.* at 700. But *Yamasaki* was about an entirely different statute. And although the rule laid out in *Yamasaki* may be true as a general rule, it does not stop the Court from looking at a particular statute that uses the word "individual" and determining that, even if the use of "individual" does not always bar class actions, it does bar them in the particular statute at issue. And that is exactly what the Court found in *Reno*. Additionally, in *Nken v. Holder*, 556 U.S. 418 (2009), the Court interpreted the statute the exact same way. *Id.* at 431 (describing § 1252(f)(1) as "a provision prohibiting classwide injunctions against the operation of removal provisions"). It is telling that Petitioners choose not to engage with *Reno*, other than to dismiss it as "dictum."

We are not alone in our interpretation of § 1252(f)(1). Other courts, following *Reno*'s guidance, have determined that they do not have jurisdiction under § 1252(f)(1) to issue class-based injunctive relief against the removal and detention statutes. *See Van Dinh v. Reno*, 197 F.3d 427, 433 (10th Cir. 1999) ("§ 1252(f) forecloses jurisdiction to grant class-wide injunctive relief to restrain operation of §§ 1221–31 by any court other than the Supreme Court."); *Pimentel v. Holder,* 2011 WL 1496756, at *2 (D.N.J. Apr. 18, 2011) (explaining § 1252(f)(1) bars courts from exercising jurisdiction over class claims for injunctive relief); *Belgrave v. Greene*, 2000 WL 35526417, at *4 (D. Colo. Dec. 5, 2000) (explaining that § 1252(f)(1) does not bar detainees from seeking habeas relief from detention, but it does "require[] that those challenges be brought on a case-by-case basis").

*Objection #2: § 1252(f)(1) does not apply to habeas.* Petitioners argue that "Congress made no specific reference to habeas corpus, which therefore remains intact." Petitioners cite *St. Cyr*, which says that "[i]mplications from statutory text or legislative history are not sufficient to repeal habeas jurisdiction; instead, Congress must articulate specific and unambiguous statutory directives to effect a repeal." 533 U.S. at 299. Petitioners go on to point out that the lack of reference to habeas jurisdiction in § 1252(f)(1) is especially notable given that in other parts of § 1252, Congress chose to specifically mention habeas using the phrase: "Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision." *See* §§ 1252[a)(2)(A), (B), (C), 1252(a)(4), (5), 1252(g).

But Petitioners' argument fails because there is nothing in § 1252(f)(1) that suspends the writ of habeas corpus. It is true that habeas is barred as to *injunctive relief* for *class actions*, but there is nothing barring a class from seeking a traditional writ of habeas corpus (which is distinct from injunctive relief, *see Jennings*, 138 S. Ct. at 858 (Thomas, J., concurring in part and concurring in the judgment)), or an individual from seeking habeas relief, whether injunctive or otherwise. There was therefore no reason for Congress to explicitly call attention to habeas jurisdiction in § 1252(f)(1). Additionally, *St. Cyr* is not properly invoked by Petitioners because the animating principle behind *St. Cyr* was that courts needed to tread carefully when interpreting a statute that "invokes the outer limits of Congress' power." *St. Cyr*, 533 U.S. at 299. In such cases, "we expect a clear indication that Congress intended that result." *Id.* But delineating the jurisdiction of Article III courts is soundly within the powers of Congress. *See Bender*, 475 U.S. at 541 ("Federal courts are not courts of general jurisdiction; they have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress . . . .").

*Argument #3: As to their statutory claims, Petitioners do not seek "to enjoin or restrain the operation of the [referenced] provisions" of the INA.* Petitioners claim that "the district court was not enjoining or restraining the statutes, but rather interpreting them to ensure they are correctly enforced." There are two problems with this argument. First, *Jennings* foreclosed any statutory interpretation that would lead to what Petitioners want. The *Jennings* Court chastised the Ninth Circuit for "erroneously conclud[ing] that periodic bond hearings are required under

the immigration provisions at issue here," a conclusion the Ninth Circuit came to by "adopt[ing] implausible constructions of the . . . immigration provisions at issue." *Jennings,* 138 S. Ct. at 850, 836. Similarly, Petitioners' argument here cannot succeed to the extent that Petitioners are arguing the district court was *interpreting* the statute to find a statutory basis for the injunction.

Second, the claim that "the district court was not enjoining or restraining the statutes" is implausible on its face. The district court, among other things, ordered release of detainees held "for six months or more, unless a bond hearing for any such detainee is conducted"; created out of thin air a requirement for bond hearings that does not exist in the statute; and adopted new standards that the government must meet at the bond hearings ("shall release . . . unless the immigration judge finds, by clear and convincing evidence, that the detainee is either a flight risk or a public safety risk"). If these limitations on what the government can and cannot do under the removal and detention provisions are not "restraints," it is not at all clear what would qualify as a restraint.

The district court did not have jurisdiction to enter class-wide injunctive relief on Petitioners' detention-based claims.**[8]**

### III.

The district court lacked jurisdiction to enter its preliminary injunction both with regard to the removal-based and the detention-based claims. It lacked jurisdiction over the removal-based claims because § 1252(g) plainly reserves for the Attorney General the authority to execute removal orders. These orders are not subject to judicial review. There is no Suspension Clause violation because the Suspension Clause can only be triggered when a petitioner is

---

**[8]**The dissent claims *Jennings* leaves open the possibility that constitutional claims may survive § 1252(f)(1)'s removal of jurisdiction. We recognize that the Court in *Jennings* did not rule on whether a court may issue class-wide injunctive relief on the basis of constitutional claims. *See* 138 S.Ct. at 851. However, in declining to rule on this issue, *Jennings* leaves in place the holding from *Reno* that § 1252(f)(1) bars injunctive relief—period. Absent an explicit holding otherwise, we see no way to interpret *Reno* to allow injunctive relief on *any* basis.

The dissent claims also that § 1252(f)(1) does not bar declaratory relief. Be that as it may, both parties agree in their letter briefs that the issue of declaratory relief is not before us. Even if it were before us, we are skeptical Petitioners would prevail. It is true that "declaratory relief will not always be the functional equivalent of injunctive relief." *Alli v. Decker*, 650 F.3d 1007, 1014 (3d Cir. 2011). But in this case, it is the functional equivalent. The practical effect of a grant of declaratory relief as to Petitioners' detention would be a class-wide injunction against the detention provisions, which is barred by § 1252(f)(1).

requesting release from custody. That is not what Petitioners request in the instant case. Instead, they seek additional time to have their petitions heard in the immigration courts. Additionally, the district court lacked jurisdiction over the detention-based claims because § 1252(f)(1) unambiguously strips federal courts of the authority to enter class-wide injunctive relief, as the district court did in this case. We accordingly **VACATE** the preliminary injunctions for both the removal-based and the detention-based claims, and we **REMAND** with directions to dismiss the removal-based claims for lack of jurisdiction, and for further proceedings consistent with this opinion.

————————————

**DISSENT**

————————————

HELENE N. WHITE, Circuit Judge, dissenting.

I respectfully dissent.

The majority vacates the preliminary injunctions relative to both types of claims—the removal-based claims and the detention-based claims—on the basis that the district court lacked jurisdiction to enter the injunctions. The removal-based relief must be vacated, says the majority, because the Suspension Clause, on which the district court relied, "can only be triggered when a petitioner is requesting relief from custody" (Maj. Op. at 14–15), and, in any event, Congress's petition-for-review procedure provides an adequate substitute for habeas as applied to Petitioners (Maj. Op. at 9). The detention-based relief must be vacated, according to the majority, because "§ 1252(f)(1) unambiguously strips federal courts of the authority to enter class-wide injunctive relief." (Maj. Op. at 15.) Although the majority remands for further proceedings, it rejects the avenues left open by *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018), which was decided after the injunctions were entered.

Although I agree with the majority that *Jennings* forecloses Petitioners' argument that the district court did not enjoin the operation of the provisions, but rather enforced them after interpreting them to require bond hearings, I disagree with the remainder of the majority's conclusions. Regarding the removal-based claims, protection against the executive action of removal is within the recognized scope of habeas, and the petition-for-review procedure provides an inadequate substitute for habeas under the circumstances presented here. Thus, the district court properly exercised jurisdiction over that claim. Regarding the detention-based claims, the district court had jurisdiction under § 2241, and § 1252(f)(1) does not purport to bar class-wide declaratory relief or individual injunctive relief.

## I. Removal-Based Claims

I dissent from the majority's determination that the district court lacked jurisdiction to enter the preliminary injunction staying removal until Petitioners have the opportunity to file motions to reopen and pursue their available avenues for administrative relief and judicial review. Petitioners do not challenge the orders of removal; they claim that country conditions have changed since those orders were entered and that they face persecution, torture, and possibly death if removed to Iraq. They do not ask the courts to make this determination in the first instance; they seek only to pursue their statutory rights to reopen their cases and make the requisite showing before the administrative agency. In short, they seek time to pursue Congress's mandated avenues for relief before they are deported, which, they plausibly assert, will render any relief granted pursuant to those procedures meaningless. The district court determined that Congress's withdrawal of habeas jurisdiction under these circumstances constitutes an as-applied violation of the Suspension Clause. I agree.

**Scope of Habeas and the Suspension Clause**

The United States Constitution states: "The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. Const. art. I, § 9, cl. 2. Known as the "Suspension Clause," this provision establishes that suspension of the common-law writ of habeas corpus is a constitutional violation. *See Boumediene v. Bush*, 553 U.S. 723, 745 (2008) (reciting history of the Suspension Clause and explaining its modern-day application).

The relief available under habeas corpus is not nearly as narrow as the majority holds. In its order granting the preliminary injunction, the district court considered the relevant case law and correctly noted that "in none of the many cases cited by the parties and by the Court regarding habeas jurisdiction in immigration cases has a court refused to consider a petitioner's argument on the grounds that the challenge to the removal order was not cognizable for failure to challenge detention." (R. 87, PID 2336-37 (collecting cases).)

The majority opinion sweeps broadly, finding that the Suspension Clause only protects the "core" remedy of release from detention and that protection from removal is not included. In

support of this argument, the majority cites *INS v. St. Cyr*, 533 U.S. 289, 301 (2001) ("At its historical core," the writ "served as a means of reviewing the legality of Executive detention."), and *Munaf v. Geren*, 553 U.S. 674, 693 (2008) ("[T]he traditional function of the writ is to secure release from illegal custody.").

Yet neither of these cases holds that habeas protections do not include protection from removal. Notably, *St. Cyr* involved "an alien subject to a federal removal order," and recognized that the Suspension Clause requires some "judicial intervention in deportation cases." *St. Cyr*, 533 U.S. at 300 (citing *Heikkila v. Barber*, 345 U.S. 229, 235 (1935)). The *St. Cyr* Court also stated that habeas was "the sole means by which an alien could test the legality of his or her deportation order" until the 1952 enactment of the Immigration and Nationality Act. *Id.* at 306. The Court explained that "even assuming that the Suspension Clause protects only the writ as it existed in 1789, there is substantial evidence to support the proposition that pure questions of law like the one raised by the respondent in this case could have been answered in 1789 by a common-law judge with power to issue the writ of habeas corpus." *Id.* at 304-05. As a result, the Court reasoned, "[i]t necessarily follows that a serious Suspension Clause issue would be presented" by Congress's withdrawal of habeas review from federal courts without providing an "adequate substitute for its exercise." *Id.* at 305. Like *St. Cyr*, the present case involves aliens subject to federal removal orders who seek habeas review on a question of law related to their immigration proceedings, specifically, whether a district court has jurisdiction to stay removal proceedings for aliens at risk of immediate deportation where the relief available in the immigration courts does not provide an adequate and effective alternative. The majority focuses on the relief sought—cancellation of removal, which would leave St. Cyr free to remain in the U.S., as opposed to withholding of removal, which would entitle Petitioners *not* to be released into Iraq. The majority then notes that an alien who shows he will suffer torture is not automatically entitled to stay in the U.S. and may be removed to some other safe place. I do not find this difference significant; the point is that protection against deportation was within the core of the writ.

Similarly, *Munaf* explains that the "typical" habeas remedy is release, but nowhere states that it is the only "core" habeas remedy. In *Munaf*, the petitioners were U.S. citizens who were

arrested by U.S.-led forces in Iraq on terrorism-related charges. The petitioners conceded that they were subject to arrest by the Iraqi government and sought to prevent their transfer to Iraqi custody following an extradition request. *Munaf*, 553 U.S. at 693. The Court explicitly found that it had jurisdiction over the habeas petitions but noted that the petitioners' requested relief was inappropriate because they were not asking for release from custody, which would "expose them to apprehension by Iraqi authorities for criminal prosecution." *Id.* The Court went on to explain that "habeas is not a means of compelling the United States to harbor fugitives from the criminal justice system of a sovereign with undoubted authority to prosecute them." *Id.* at 697. Here, Petitioners are not subject to the extradition request of a foreign power and are not seeking habeas that would "shelter them" from government prosecution. Although *Munaf* declined to grant the petitioners the requested relief, the *Munaf* Court did not hold that the writ is unavailable where the petitioner seeks to stay removal proceedings in order to pursue statutory remedies that would grant relief from removal.

Further, the history of the writ includes its application to challenge removal proceedings. In their amicus brief, Scholars of Habeas Corpus Law (Scholars) correctly observe that for over a hundred years, courts have recognized that the executive act of removing an alien from the country involves the sort of restraint on personal liberty that can properly form the basis of a habeas petition. (Scholars Br. at 5-6 (citing *Chin Yow v. U.S.*, 208 U.S. 8, 12 (1908) ("It would be difficult to say that [an alien] was not imprisoned, theoretically as well as practically, when to turn him back meant that he must get into a vessel against his wish and be carried to China."); *In re Jung Ah Lung*, 25 F. 141, 142 (D. Cal. 1885) ("If the denial, therefore, to the petitioner of the right to land, thus converting the ship into his prison-house, to be followed by his deportation across the sea to a foreign country, be not a restraint of his liberty within the meaning of the habeas corpus act, it is not easy to conceive any case that would fall within its provisions."), *aff'd*, 124 U.S. 621 (1888)).) Thus, the district court did not err in concluding that it had jurisdiction over the removal-based claims under the Suspension Clause.

**Adequate and Effective Alternative**

Of course, even where the Suspension Clause applies, it is not violated where habeas is replaced with an adequate and effective alternative. Relying on *Muka v. Baker*, 559 F.3d 480

(6th Cir. 2009), the majority concludes that even assuming the Suspension Clause applies, "the REAL ID Act does not violate the Suspension Clause because a petition for review provides an 'adequate and effective' mechanism for relief." *Id.* at 484 (citing *Swain v. Pressley*, 430 U.S. 372, 381 (1977)). Petitioners do not dispute that the petition-for-review process generally provides an adequate alternative to habeas. Rather, they assert, and the district court found, that the petition-for-review mechanism is not adequate and effective as applied to Petitioners in the present "compelling confluence of grave, real-world circumstances." (R. 64, PID 1243-44.) Importantly, *Muka* did not "foreclose other distinct as-applied challenges" under the Suspension Clause. *Muka*, 559 F.3d at 486. The majority gives short shrift to the district court's core finding, simply asserting that "Petitioners had years to file their motions to reopen; they cannot now argue that the system gave them too little time. The administrative scheme established by Congress even provided multiple avenues to stay removal while pursuing relief." (Maj. Op. at 9.) The majority plainly ignores the facts on the ground.

Aliens seeking to challenge their removal based on changed country conditions can file a motion to reopen, which is a request for redetermination of a prior decision to remove the alien. *See* 8 U.S.C. § 1229a(c)(7); 8 C.F.R. §§ 1003.2(c)(1) and 1003.23(b)(3). A motion to reopen does not automatically stay removal. Once a motion to reopen has been filed, the alien may also file a motion to stay, although there is no guarantee that an alien will not be deported during the pendency of the motion to stay removal. A motion to reopen based on changed country conditions must establish prima facie eligibility for the relief sought, *see* 8 U.S.C. § 1229a(c)(7), which means the motion and supporting documentation must (1) set forth a complete description of the new circumstances, (2) articulate how those new circumstances affect the party's eligibility for relief, and (3) include evidence of the changed circumstances, 8 C.F.R. §§ 1003.2(c); 1003.23(b)(3) and (4)(i); Immigration Court Practice Manual, Chapter 5.7(e)(i) (June 10, 2013).

In this case, Petitioners' grounds for relief from removal based on changed country conditions in Iraq arose *after* (in some cases, many years after) Petitioners' removal proceedings had ended. Petitioners presented the district court with evidence that because they were likely to be killed or tortured if deported, their impending removal would be in violation of the

Immigration and Nationality Act (INA) and the Convention Against Torture (CAT), and that without a stay they would be deported before they could seek relief under these acts. The government did not contest this evidence, and the majority does not find fault with the district court's findings that without a stay, deportations would commence immediately, with death, torture, and persecution probably resulting. Instead, the majority faults Petitioners for failing to file motions to reopen earlier. Yet there are good reasons for Petitioners' failure to do so. The government was unable to deport Petitioners to Iraq until 2017 when a diplomatic agreement resulted in the resumption of removals. Petitioners were living for years (or decades) under removal orders but with no actual prospect of being deported. Susan Reed, Petitioners' witness and the Managing Attorney of the Michigan Immigrant Rights Center, explained that stays of removal are not typically sought until removal is imminent because they are rarely granted when removal is not imminent. Although Petitioners could have filed motions to reopen and to stay removal, it is not reasonable to expect that they would have done so because there was no real possibility of removal, and it was unclear what country conditions might be at some hypothetical future time when removal might be possible.

There is abundant evidence in the record that motions to reopen are complicated, time-consuming, and expensive. These motions require the applicant to compile files, affidavits, and "hundreds of pages of supporting evidence," fill out all sections of the application, and include an original signature. (*See* R. 77-2, R. 77-26, R. 77-27, R. 30-3 ¶ 12, 8 C.F.R. § 1003.2(c)(1) (noting that a motion to reopen "must be accompanied by the appropriate application for relief and all supporting documentation").) Amicus Curiae American Immigration Lawyers Association's (AILA) explains that "[t]he mechanics of filing a Motion to Reopen with either the immigration court or the Board of Immigration Appeals can be a highly-complex and time-consuming process even for the most-seasoned immigration attorney." (AILA Br. at 3.) Here, attorneys faced difficulties preparing the applications because Petitioners were transferred to out-of-state facilities and even when attorneys did visit the out-of-state facilities, they were often denied the opportunity to meet with their clients. (*See* R. 77-22 ¶¶ 7–9 (attorney who drove four hours to meet with client was denied the opportunity to visit on two separate occasions, despite prior assurances that they would be able to meet); R. 77-7 (attorney stating that it is "nearly

impossible" for her to meet with her clients "because they were all transferred . . . approximately 4 hours away").)

Petitioners additionally note that their Alien files (A-files)—which document their immigration history—and Records of Proceedings (ROP)—which document past proceedings before the immigration courts and BIA—are ordinarily attainable only through a FOIA request and can take months to obtain.  (R. 77-28 ¶¶ 6, 7; R. 77-26 ¶¶ 8, 9; AILA Br. at 2 (explaining that the motion to reopen "takes time, in large part due to the government's own bureaucratic weight, the difficulty in obtaining and reviewing records and evidence particularized to each individual respondent, and the sudden strain on a community affected by mass round-up of its members").)  Under normal circumstances, preparing a motion to reopen can take between three and six months.  (R. 77-26 ¶ 12; R. 77-27 ¶ 5.)

The majority's assertion that "[t]he administrative scheme established by Congress even provided multiple avenues to stay removal while pursuing relief" would carry weight if the Petitioners had had time to pursue the "multiple avenues," or indeed *any* avenue.  (Maj. Op. at 9.)  But when the ICE raids began, Petitioners were faced with the very real possibility that they would be deported before they could reopen their immigration cases and then be imprisoned, tortured, or killed upon removal to Iraq.  If the district court had not granted a stay of removal, Petitioners would have quickly been deported far beyond the reach of habeas and the court's jurisdiction.  *See Boumediene*, 553 U.S. at 787 (explaining that "when the judicial power to issue habeas corpus properly is invoked the judicial officer must have adequate authority to make a determination in light of the relevant law and facts and to formulate and issue appropriate orders for relief, including, if necessary, an order directing the prisoner's release").  The circumstances were such that recourse to the immigration courts, the BIA, and the courts of appeal would not have been an adequate or effective substitute for habeas relief.

Nor is the district court's application of the Suspension Clause under these circumstances novel or unusual.  Courts throughout the country confronting similar circumstances have found that interpreting § 1252(g) to divest them of jurisdiction could violate the Suspension Clause.  In *Devitri v. Cronen*, 289 F. Supp. 3d 287 (D. Mass. 2018), fifty Indonesian Christians who were subject to orders of removal brought habeas petitions seeking stays of deportation.  The

petitioners sought to file motions to reopen based on changed country conditions in Indonesia that occurred after their original removal orders were entered. *Id.* at 291. The district court noted that petitioners provided "persuasive evidence demonstrating that it is likely that the BIA will not rule on their non-emergency motions to stay before they are deported." *Id.* at 294. As a result of this "Kafkaesque procedure," petitioners would be "removed back to the very country where they fear persecution and torture while awaiting a decision on whether they should be subject to removal because of their fears of persecution and torture." *Id.* The district court determined that the BIA's "processes for adjudicating motions to reopen and motions to stay are not adequate administrative alternatives to habeas for these petitioners," and that § 1252(g) resulted in an as-applied violation of the Suspension Clause. *Id.*

Other courts have concluded that the motion to reopen process is not an adequate substitute for habeas relief in circumstances similar to Petitioners'. *Ibrahim v. Acosta*, No. 17–cv–24574, 2018 WL 582520, at *5–6 (S.D. Fla. Jan. 26, 2018) (granting habeas petitions for stay of removal to class of Somali nationals subject to orders of removal and facing imminent deportation, concluding that § 1252(g) "violates the Suspension Clause as applied if it deprives Petitioners of a meaningful opportunity to exercise their statutory right to file motions to reopen their immigration cases"); *Sied v. Nielson*, No. 17–cv–06785, 2018 WL 1142202, at *25 (N.D. Cal. Mar. 2, 2018) (holding that the motion-to-reopen process "is not a constitutionally adequate substitute process in the facts of this case, where the government can manipulate the process by deporting Mr. Sied before he can be heard, to a country [Eritrea] where he may be tortured or killed"); *Hussein v. Brackett*, No. 18–cv–273–JL, 2018 WL 2248513, at *7 (D.N.H. May 16, 2018) (finding that petitioner "has raised a colorable claim that the jurisdiction-divesting provisions of § 1252 violate the Suspension Clause as applied to him, and that this court has jurisdiction to resolve that question").

Because Petitioners had no reason to file motions to reopen and to stay without some notice that removal was imminent, and once they received such notice the petition-for-review process failed to provide a realistic possibility of effective relief, the district court correctly concluded that the petition-for-review process failed to provide an adequate alternative to habeas relief.

In sum, the majority's conclusion that Congress can permissibly render the federal courts impotent to temporarily stay the executive branch's imminent removal of aliens to a place where they are likely to be tortured before they have an opportunity to pursue relief based on changed country conditions is contrary to the historical understanding of the writ of habeas corpus and the Suspension Clause.  I would affirm the district court's exercise of jurisdiction and its grant of the preliminary injunction on the removal-based claims.

## II.  Detention-Based Claims

Although § 1252(f)(1) and its interpretation by the Supreme Court in *Reno v. American-Arab Anti-Discrimination Committee*, 525 U.S. 471 (1999) appear to foreclose the possibility of class-wide *injunctive* relief, there is no indication that the statute forecloses class-wide *declaratory* relief, and it clearly allows for individual relief where the court otherwise has jurisdiction.[1]

In *Reno*, the Supreme Court considered § 1252(f)(1) within the context of the broader Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA) and explained that "[b]y its plain terms," § 1252(f)(1) is "a limit on injunctive relief." *Id.* at 481.  The Court stated that § 1252(f)(1) "prohibits federal courts from granting class-wide injunctive relief against the operation of §§ 1221–123[2]," but "does not extend to individual cases." *Id.* at 481-82.

But the Supreme Court addressed § 1252(f)(1) again in *Jennings v. Rodriguez,*[2] and seemingly left open the possibility that § 1252(f)(1) does not apply to constitutional claims.  Citing *Reno* for the proposition that § 1252(f)(1) "prohibits federal courts from granting class-wide injunctive relief against the operation of §§ 1221–123[2]," the *Jennings* Court declined to consider the aliens' constitutional arguments in favor of injunctive relief.  138 S. Ct. at 851.  The Court remanded to the Ninth Circuit, instructing that:

---

[1]*Reno* expressly rejected the view that § 1252(f)(1) provides "an affirmative grant of jurisdiction" over class-based challenges to removal decisions. *Id.* at 482.

[2]In *Jennings*, the Court rejected the Ninth Circuit's conclusion that the doctrine of constitutional avoidance requires that § 1225(b) and § 1226(c) be interpreted to include a 6-month limit on mandatory detentions and to require bond hearings after that point, 138 S. Ct. at 846, explaining that the sections are unambiguous as to the permissible length of detention and do not authorize bond hearings.  Thus, I agree that to the extent the district court determined that the statutes incorporate a bond-hearing requirement, it erred.

the Court of Appeals should consider on remand whether it may issue classwide injunctive relief based on respondents' constitutional claims.  If not, and if the Court of Appeals concludes that it may issue only declaratory relief, then the Court of Appeals should decide whether that remedy can sustain the class on its own.

*Id.*

The majority concludes that the issue was settled by *Reno*; but if this is so, the *Jennings* Court's remand is baffling.  In any event, and assuming *Reno* settled the issue, *Jennings* clearly supports that class-wide declaratory relief is not barred.  Other courts have determined that § 1252(f)(1) does not bar class-wide declaratory relief.   *See Alli v. Decker*, 650 F.3d 1007, 1013 (3d Cir. 2011) ("[V]iewing the provision in context and then taking into consideration the heading of the provision ['limits on injunctive relief'], it is apparent that the jurisdictional limitations in § 1252(f)(1) do not encompass declaratory relief."); *Rodriguez v. Hayes*, 591 F.3d 1105, 1119 (9th Cir. 2010) ("It is simply not the case that Section 1252(f) bars Petitioner from receiving declaratory relief on behalf of the class."); *Reid v. Donelan*, No. 13-30125-PBS, 2018 WL 5269992, at *6 (D. Mass. Oct. 23, 2018) (declining to address whether § 1252(f)(1) bars a class-wide injunction because the statute "does not bar class-wide declaratory relief, which suffices to satisfy Rule 23(b)(2)").   This, of course, is consistent with § 1252(f)(1)'s use of the words "enjoin" and "restrain," as compared with § 1252(e)(1)'s language explicitly preventing courts from entering "declaratory, injunctive, or other equitable relief" in cases involving aliens excluded under 8 U.S.C. § 1225(b)(1).

The majority notes that the parties' letter briefs make clear that the issue of declaratory relief is not before us.  (Maj. Op. at 14, N.8.)  That is true in the sense that Petitioners state "§ 1252(f)(1) does not apply to Petitioners' request for classwide declaratory relief, which is not before this Court, as the district court has not yet ruled on Petitioners' request for such relief." (Petitioners' Letter Br. at 10.)  But the request for such relief is part of the case and should be entertained by the district court on remand without prejudgment by this court.

**Conclusion**

In sum, I would affirm the district court's preliminary injunction as to the removal-based claims; as to the detention-based claims, I would vacate the district court's class-wide preliminary injunction and remand for reconsideration in light of *Jennings* and for further proceedings as are consistent with § 1252(f)(1).