NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0272n.06

No. 20-3858

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

LAHIB NAMET FARAJ NAM KANONA,

    Petitioner,

v.

MERRICK B. GARLAND, Attorney General,

    Respondent.

)
)
)
)
)
)
)
)
)
)

**FILED**
Jun 03, 2021
DEBORAH S. HUNT, Clerk

ON PETITION FOR REVIEW
FROM THE UNITED STATES
BOARD OF IMMIGRATION
APPEALS

Before: GIBBONS, KETHLEDGE, and MURPHY, Circuit Judges.

KETHLEDGE, Circuit Judge. In 1994, Lahib Kanona was convicted of violent felonies involving a firearm. He was ordered removed to Iraq in 1997. For many years, Kanona remained in the United States under a supervision order, despite being arrested again on several occasions. In 2017, Kanona failed to report for a mandatory appointment with the Department of Homeland Security. The Department eventually located and detained Kanona after he was arrested on an assault charge. He thereafter moved to reopen his removal proceedings due to changed conditions in Iraq. The Board of Immigration Appeals denied his motion; Kanona petitioned for review of that decision. We reject his arguments and deny the petition.

I.

Kanona was born in Iraq and identifies as a Chaldean Christian. He entered the United States in 1977. In 1994, he was convicted in Michigan of assault with intent to do great bodily harm, possession of a firearm in the commission of a felony, and carrying a concealed weapon.

Meanwhile, the government began removal proceedings against him, based in part on his felony firearm conviction. *See* 8 U.S.C. § 1227(a)(2)(C). An IJ ordered him removed to Iraq. Kanona appealed, but the Board affirmed the IJ's decision.

Yet the government allowed him to remain in the United States under a supervision order, which remained in effect after his release from prison. *See* 8 C.F.R. § 241.5. Kanona was fined in 2009 for disorderly conduct and in 2013 for disturbing the peace. Later in 2013 he was also arrested for larceny. In 2017, Kanona failed to appear at a scheduled appointment with the Department of Homeland Security (DHS) under his supervision order. Kanona remained a fugitive from DHS until June 2019, when police in Sterling Heights, Michigan arrested him for assault. Immigration officials then took him into custody and revoked his supervision order.

Kanona thereafter moved to reopen his removal proceedings, arguing that he was eligible for deferral of removal under the Convention Against Torture (CAT). That motion was untimely by more than 20 years. *See* 8 U.S.C. § 1229a(c)(7)(C)(i). But Kanona argued that he would be tortured upon his return to Iraq because of his status as a Chaldean Christian and his prior residence in the United States. In support, Kanona introduced dozens of documents on current conditions in Iraq, including news articles and expert reports. DHS opposed the motion and introduced its own voluminous documentary evidence refuting Kanona's characterization of conditions in Iraq.

The Board denied Kanona's motion on multiple grounds, finding among other things that Kanona had not shown that he would be tortured upon his return to Iraq. Kanona petitioned this court for review.

## II.

We review the denial of Kanona's motion to reopen for an abuse of discretion. *See Trujillo Diaz v. Sessions*, 880 F.3d 244, 248 (6th Cir. 2018). The Board can deny his motion because he

failed to establish a prima facie case for CAT relief. *See I.N.S. v. Doherty*, 502 U.S. 314, 323 (1992). But Kanona meets his burden at this stage if he presents evidence that "reveals a reasonable likelihood" that he has met the requirements for CAT relief. *Hernandez-Perez v. Whitaker*, 911 F.3d 305, 320-21 (6th Cir. 2018). We review for substantial evidence the Board's determination that Kanona did not make that showing. *See Kilic v. Barr*, 965 F.3d 469, 473 (6th Cir. 2020).

Under the CAT, Kanona must show that he "more likely than not" would be tortured upon his return to Iraq "by, or at the instigation of, or with the consent or acquiescence of," an Iraqi public official. 8 C.F.R. §§ 1208.16(c); 1208.18(a)(1). Kanona argues that the evidence he submitted to the Board makes that showing. Specifically, Kanona fears that a militia called the Popular Mobilization Forces (PMF) regularly tortures Christians and is incorporated into the Iraqi military. He also asserts that the recent mass removal of Iraqi Christians will expose him to increased notoriety in Iraq and, by extension, a higher risk of torture. *See generally Hamama v. Adducci*, 912 F.3d 869, 872 (6th Cir. 2018).

Kanona submitted many expert reports and news articles that detailed challenges faced by Iraqi Christians. One declaration asserted that Shia militias within the PMF have committed atrocities against Christians, and several articles reported attacks by Shia militias on some Christians in northern Iraq. Other reports and articles also asserted that Iraqis affiliated with the United States faced threats of violence, particularly in the areas of northern Iraq that were once occupied by ISIS. Kanona asserts, somewhat perfunctorily, that these "various pieces of evidence" demonstrate a significant risk that he would be tortured in Iraq.

But DHS also submitted evidence, much of which arguably refuted Kanona's assertions about Christians being tortured due to their religion. For example, one expert opined that

Christians can now celebrate their faith without fear of reprisal and that militias like the PMF do not target Christians, "despite opportunities to do so." Another expert said that the defeat of ISIS "increases the security for Christians broadly throughout [Iraq]," and that the Iraqi government has secured Christian churches and neighborhoods. News articles submitted by DHS said the same thing and detailed how Christians not only returned to their homes but also celebrated overtly religious holidays like Christmas. Other evidence tended to refute Kanona's assertion that his American affiliation would create a risk of torture for him in Iraq. One expert acknowledged that some Iraqi populations are anti-American, but said they "do not regularly target individuals or groups because of an anti-American or anti-western sentiment." If anything, the expert said, Kanona's time in the United States would lead others to assume he had no ties to ISIS, which is a principal adversary of both the Iraqi government and the militias. Yet another expert declared that he knew of "no incidents" where Iraqi citizens returning from the United States were tortured due to their criminal history in the United States.

Kanona contends that the State Department's Iraq 2018 Human Rights Report refutes DHS's representations. That report does say that "government forces, particularly" militias, "targeted ethnic and religious minorities." As it pertains to Christians, however, the report primarily describes how certain Christians were harassed and had their property seized. But those incidents do not constitute the "extreme form of cruel and inhuman treatment" necessary to constitute torture under the CAT. 8 C.F.R. § 1208.18(a)(2). The report also includes a short anecdote about militia members who targeted and killed a Christian. An isolated story, however, does not compel the conclusion that the Board was wrong to credit the many expert statements proffered by DHS. The State Department's report therefore does not compel the conclusion that

4

Kanona had established a prima facie claim for CAT relief. He points to no other evidence that would compel that conclusion in spite of the evidence submitted by DHS.

In sum, Kanona and DHS alike presented considerable evidence in support of their respective positions as to the hazards that Kanona would face in Iraq. Neither side's evidence compelled a conclusion in its favor, which means the Board was entitled to choose among them. The Board found that Kanona had not established a "reasonable likelihood" that he had met the requirements for CAT relief. The Board therefore did not abuse its discretion when it denied his motion to reopen.

The petition for review is denied.