**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

|  |  |
|---|---|
| HASSAN AL-HILLO, | No. 20-70327 |
| Petitioner, | Agency No. A075-054-075 |
| v. |  |
| MERRICK B. GARLAND, Attorney General, | MEMORANDUM* |
| Respondent. |  |

On Petition for Review of an Order from the Board of Immigration Appeals

Submitted June 8, 2021**
Seattle, Washington

Before:  GILMAN,*** GOULD, and MILLER, Circuit Judges.

Hassan Al-Hillo is a native and citizen of Iraq.  He seeks review of the January

8, 2020 decision by the Board of Immigration Appeals (BIA) to dismiss his appeal

from the Immigration Judge's (IJ's) denial of his motion to reopen with regard to his

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\* The panel unanimously concludes this case is suitable for decision without oral argument.  *See* Fed. R. App. P. 34(a)(2).

\*\*\* The Honorable Ronald Lee Gilman, United States Circuit Judge for the U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

claim for protection under the Convention Against Torture (CAT). To reopen proceedings, Al-Hillo was required to produce evidence that would establish prima facie eligibility for protection under the CAT—that is, evidence that would establish a "reasonable likelihood" that he will be able to show that it is more likely than not that he will be tortured if returned to Iraq. *Kaur v. Garland*, No. 18-72786, 2021 WL 2521610, at *10 (9th Cir. June 21, 2021). We generally review the denial of a motion to reopen under the abuse-of-discretion standard. *Toufighi v. Mukasey*, 538 F.3d 988, 992 (9th Cir. 2008).

1. Al-Hillo's CAT claim relies in part on an affidavit submitted by Daniel W. Smith, a researcher specializing in Iraq who has lived there since 2007. Smith prepared the affidavit in support of the plaintiffs in *Hamama v. Adducci*, 912 F.3d 869 (6th Cir. 2018), a class-action lawsuit filed by Iraqi nationals subject to final orders of removal. He opined that the deportees faced an increased risk of torture from Iraq's immigration officials because the officials would want to uncover the nature of the deportees' crimes as reported by the American news media.

The BIA acknowledged this evidence, finding that "the record reflects individuals removed from the United States preceded or accompanied by media coverage of the individual's conviction for major crimes, including homicide, rape and kidnaping, . . . are at an increased risk for coercive interrogation and torture." But because Al-Hillo had been convicted of only minor crimes, the BIA concluded

2

that Al-Hillo had failed to show "that he exhibits any characteristics that would place him at a higher risk for harm."

This conclusion, however, rests on a mischaracterization of the evidence. Smith opined that deportees to Iraq face an increased risk of torture simply based on the *presumption* that they had committed serious crimes. As stated in Smith's affidavit,

> there is a presumption that deportees have been convicted of major crimes, including crimes specifically named by U.S. government officials in media reports – such as homicide, rape, and crimes that are viewed as particularly troubling in Iraq. . . . These immigration officials therefore told me that it is highly likely that Iraqi security forces, or other entities that operate with the authority of the government, will use coercive interrogation to confirm that presumption.

Accepting Smith's affidavit as true, as we are required to do at this stage of the case, *see Agonafer v. Sessions*, 859 F.3d 1198, 1203 (9th Cir. 2017), this presumption would also apply to Al-Hillo and place him at an increased risk of torture.

2.      The BIA did not address Al-Hillo's evidence of current country conditions in Iraq, specifically regarding Iraq's "pervasive culture of torture and human rights abuses." Included in the record are excerpts of reports from both the U.S. Department of State and the United Nations Assistance Mission for Iraq, each commenting on the central role that torture plays in Iraq's approach to interrogation.

3

Smith's affidavit relied on these reports, and on interviews with Iraqi immigration, judicial, and security officials, to similarly conclude that torture is routinely committed in Iraq's detention facilities.

Neither the IJ nor the BIA commented on Al-Hillo's country-conditions evidence. Their failure to consider evidence of current country conditions constitutes an abuse of discretion warranting remand. *See Aguilar-Ramos v. Holder*, 594 F.3d 701, 705 (9th Cir. 2010) ("Because the BIA failed to consider the Country Report at all, the proper course of action is to remand with instructions that the BIA reconsider Aguilar's CAT claim in light of the Country Report."); *see also Kamalthas v. INS*, 251 F.3d 1279, 1284 (9th Cir. 2001) (holding that the BIA abused its discretion when it denied the petitioner's motion to reopen without considering evidence of country conditions).

3. In addition to the Smith affidavit and other evidence of current country conditions, Al-Hillo submitted an affidavit from Rebecca Heller, the Director of the International Refugee Assistance Project. Heller opined that Iraqis with lengthy ties to the United States would be at an especially high risk of persecution or torture if removed to Iraq. Al-Hillo, who has been in the United States for 24 years, falls well within this category of people. Again, the BIA did not comment on this evidence.

4. Setting aside any contrary evidence, the country-conditions reports and the Smith and Heller affidavits together compel the conclusion that Al-Hillo has made

out a prima facie case for protection under the CAT.  *See Hamoui v. Ashcroft*, 389 F.3d 821, 828 (9th Cir. 2004).  We therefore grant Al-Hillo's petition for review and remand the case to the BIA for further proceedings consistent with this opinion.  In doing so, we express no opinion as to the merits of Al-Hillo's underlying claim for CAT relief.

**PETITION GRANTED and CASE REMANDED.**