FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| WILLIAN MATIAS RAUDA, | No. 21-16062 |
| *Plaintiff-Appellant,* | D.C. No. 3:21-cv-03897-CRB |
| v. | |
| DAVID JENNINGS, in his official capacity, Field Office Director of San Francisco Field Office, U.S. Immigration and Customs Enforcement; TAE D. JOHNSON, Acting Director of U.S. Immigration and Customs Enforcement; MERRICK B. GARLAND, Attorney General; ALEJANDRO N. MAYORKAS, Acting Secretary of Department of Homeland Security, | ORDER AND AMENDED OPINION |
| *Defendants-Appellees.* | |

Appeal from the United States District Court
for the Northern District of California
Charles R. Breyer, District Judge, Presiding

Submitted to Motions Panel July 13, 2021[*]

Filed August 13, 2021
Amended December 12, 2022

Before: Johnnie B. Rawlinson, Consuelo M. Callahan, and
Lawrence VanDyke, Circuit Judges.

Order;
Opinion by Judge VanDyke

## SUMMARY[**]

### Immigration / Habeas Corpus

The panel filed: 1) an order amending the opinion filed August 13, 2021; and 2) an amended opinion affirming the district court's denial of Willian Matias Rauda's request for a temporary restraining order (TRO) to prevent the government from removing him.

In the amended opinion, the panel: (1) concluded that the district court correctly determined that it lacked jurisdiction under 8 U.S.C. § 1252(g); (2) concluded that neither the Suspension Clause nor the Due Process Clause preserve judicial review; and (3) directed the district court to dismiss

---

[*] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Matias's petition.

In 2018, Matias, a native of El Salvador, was detained by immigration authorities. An immigration judge (IJ) denied bond, and an IJ later denied him relief under the Convention Against Torture and ordered his removal. The Board of Immigration Appeals dismissed his appeal, and this court denied his petition for review. In April 2021, Matias moved the BIA to reopen, and the BIA denied a stay of removal. In May 2021, Matias filed a habeas petition with the district court, which denied his motion to enjoin his removal until his motion to reopen and habeas petition were decided. On June 14, 2021, the district court denied Matias's subsequently-filed motion for a TRO, and the government voluntarily agreed to stay removal up to and including August 13, 2021.

The panel concluded that the district court correctly determined that jurisdiction was barred by 8 U.S.C. § 1252(g), which provides that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien." The panel explained that the execution of his removal order was precisely what Matias challenged here, and that Congress could have chosen to provide petitioners like Matias with access to judicial review of non-final immigration orders, but did not do so.

The panel explained that the conclusion that it lacked jurisdiction was reinforced by the consideration that, as explained in *Shaboyan v. Holder*, 652 F.3d 988 (9th Cir. 2011), this court may only review final orders, and the BIA's interim order denying a stay of removal pending resolution

of a motion to reopen is not such an order. Noting that *Shaboyan* involved a petition for review, while this case involved a habeas petition, the panel explained that *Shaboyan* foreclosed review (direct or indirect) of the BIA's denial of his stay request.

The panel rejected Matias's claim that the Constitution's Suspension Clause preserves judicial review here. The panel relied on *DHS v. Thuraissigiam*, 140 S. Ct. 1959 (2020), in which the Supreme Court determined that habeas relief applies to petitioners seeking release from executive detention, not to those seeking to remain in the United States. Because Matias was not seeking a remedy for unlawful detention, the panel concluded that only an extreme and unwarranted expansion of the habeas writ would encompass his requested relief.

The panel also rejected Matias's argument that § 1252(g) violates due process by denying review of his claims. The panel explained that § 1252(g) does not immunize his claims from review—it merely prevents him from filing a habeas petition challenging the discretion to execute a valid order of removal while his motion to reopen is pending. Instead, he must wait to raise his claims in a petition for review of a final order. Noting that an alien is entitled to file a motion to reopen and seek a stay of removal from the agency until that motion is decided, the panel explained that this court lacks jurisdiction to intervene if the stay is denied precisely because an alien's presence in the United States is not required for adjudication of the motion to reopen. The panel concluded that this statutorily provided process satisfies any demands of the Due Process Clause when an alien subject to a valid, final order of removal seeks to reopen his removal proceedings.

Addressing Matias's request that the court grant him a stay because he would be severely harmed or killed if removed to El Salvador, the panel explained that, if a court could inject itself into the agency's process and force (another) stay because a removable alien newly represented that he would be severely injured or die when removed, all similarly situated petitioners would be incentivized to demand a stay. The panel explained that, if that were case, it seems foreseeable that this would become the new norm and courts would essentially grant automatic stays of removal pending the BIA's consideration of motions to reopen.

## COUNSEL

Sean L. McMahon and Etan Z. Newman, Pangea Legal Services, San Francisco, California; Francisco M. Ugarte and Genna E. Beier, Attorneys, San Francisco Public Defender's Office, San Francisco, California; Lee P. Gelernt, American Civil Liberties Union Foundation, New York, New York; for Plaintiff-Appellant.

Mary L. Larakers, Trial Attorney, Civil Division/Office of Immigration Litigation, United States Department of Justice, Washington, D.C., for Defendants-Appellees.

Ethan D. Dettmer, Eli M. Lazarus, Sean Howell, and Ryan Azad, Gibson Dunn & Crutcher LLP, San Francisco, California; Joshua S. Lipshutz, Gibson Dunn & Crutcher LLP, Washington, D.C., for Amici Curiae Scholars of Immigration Law.

Kristin Macleod-Ball and Trina A. Realmuto, National Immigration Litigation Alliance, Brookline, Massachusetts; Lindsay Nash, Kathryn O. Greenberg Immigration Justice Clinic, New York, New York; for Amici Curiae National Immigration Litigation Alliance and Kathryn O. Greenberg Immigration Justice Clinic of the Benjamin N. Cardozo School of Law.

---

**ORDER**

The opinion filed on August 13, 2021, and published at 8 F.4th 1050, is hereby amended by the opinion filed concurrently with this order. With this amended opinion, the panel has voted to deny the petition for rehearing en banc. The full court has been advised of the petition for rehearing en banc. A judge requested a vote on whether to rehear this case en banc, but later withdrew that request. Fed. R. App. P. 35. Accordingly, the petition for rehearing en banc is DENIED. Further petitions for panel rehearing or rehearing en banc may be filed.

**DENIED.**

---

**OPINION**

VANDYKE, Circuit Judge:

Petitioner Willian Matias Rauda appeals the district court's order denying his request for a temporary restraining order to prevent the government from removing him from the United States. In the district court, Matias argued that

deportation prior to a ruling on his motion to reopen would violate his due process rights, the Convention Against Torture, and the Immigration & Nationality Act. In denying his motion, the district court concluded that it lacked jurisdiction to reach Matias's claims. We agree with the district court and affirm.

## BACKGROUND AND PROCEDURAL HISTORY

Matias is a native of El Salvador and unlawfully entered the United States in February 2014. El Salvadoran authorities considered him a member of MS-13, a violent gang.

Leaving his partner and child, he moved to Maryland from the San Francisco Bay Area in October 2015. While residing in Maryland, Matias pleaded guilty to assault in the first degree after being involved in a gang shooting where two victims were shot. Authorities determined that the shooting was in retaliation for MS-13 gang activity, and identified Matias as an "affiliate" of MS-13. The government claims Matias admitted his status as an MS-13 gang member while he was imprisoned at Prince George's County Detention Center in Maryland. He was sentenced to twenty years in prison but was released from custody on a deferred sentence, after which he moved back to the Bay Area.

U.S. Immigration and Customs Enforcement (ICE) detained Matias in November 2018, seeking to remove him. While in ICE custody, Matias requested to be housed with a gang aligned with MS-13. An immigration judge (IJ) denied him bond in January 2019, finding he was a danger to the community. In June 2019, an IJ denied Matias relief under the Convention Against Torture (CAT) and ordered him removed to El Salvador. Matias unsuccessfully appealed to

the Board of Immigration Appeals (BIA), which dismissed his appeal in November 2019. On January 28, 2021, this court likewise denied his petition for review, determining that the evidence supported the IJ's findings. *See Matias Rauda v. Wilkinson*, 844 F. App'x 945 (9th Cir. 2021).

On April 22, 2021, Matias moved the BIA to reopen his case so that it could consider "new developments" regarding his request for CAT relief. The new developments that Matias contends undermine the BIA's previous decision are: (1) claimed political changes in El Salvador, and (2) an alleged text from an MS-13 gang member labeling him a "snitch" and saying he will be killed if he returns to El Salvador.[1] On May 14, 2021, after the Ninth Circuit's stay of removal terminated, Matias moved the BIA for an emergency stay while his motion to reopen was being considered. One week later, on May 21, 2021, the BIA denied his request for a stay.

Because he could not immediately file a direct petition for review with this court (which, as discussed below, is foreclosed by precedent), Matias filed a habeas petition with the district court on May 24, 2021, asking the court to enjoin the government from removing him until the BIA ruled on his motion to reopen and the court ruled on his habeas petition. The district court denied his motion.

ICE initially scheduled Matias's removal for the first week of June 2021, but that deadline has repeatedly slipped. On June 14, 2021, the district court denied Matias's subsequently filed motion for a temporary restraining order

---

[1] The text is alleged to have come from a sender within the United States, but Matias has never authenticated the text, nor did he provide copies to the district court.

(TRO), determining that 8 U.S.C. § 1252(g)'s jurisdictional limits barred his claims.  But the district court granted a five-day administrative stay so that this court could hear Matias's appeal.  Subsequently, the government voluntarily agreed to stay removal up to and including August 13, 2021.  Matias appeals the district court's order denying his TRO and argues that this court has jurisdiction to consider his claims.

## STANDARD OF REVIEW

"We have jurisdiction to determine whether jurisdiction exists."  *Shaboyan v. Holder*, 652 F.3d 988, 989 (9th Cir. 2011) (per curiam).  In the immigration context, "[w]e may review only final orders of removal."  *Id.*

## DISCUSSION

## I.  We Lack Jurisdiction to Review Matias's Claims.

### A.  Section 1252(g) Deprives Us of Jurisdiction.

Matias argues that the district court erred in determining that § 1252(g) bars judicial review of his claims challenging the government's execution of his removal order.  The statute's plain language, however, bars review of his claims.  Per § 1252(g), "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or *execute removal orders* against any alien."  8 U.S.C. § 1252(g) (emphasis added).

The execution of his removal order is precisely what Matias challenges here.  Matias seeks to enjoin the government from removing him—or in other words, enjoin "action by the Attorney General to ... execute removal orders against [Matias]."  *Id.*  Congress has explicitly precluded our review of this claim.

Beyond its plain text, legislative action (or inaction) corroborates that § 1252(g) was meant to preclude judicial review over claims like Matias's. While Congress could have chosen to provide Matias and other petitioners like him with access to judicial review of non-final immigration orders, it did not do so. *Cf. DHS v. Thuraissigiam*, 140 S. Ct. 1959, 1983 (2020); *Nken v. Holder*, 556 U.S. 418, 424 (2009) (explaining Congress's amendments to immigration procedures). Limiting federal jurisdiction in this way is understandable because Congress wanted to streamline immigration proceedings by limiting judicial review to final orders, litigated in the context of petitions for review. *See Nken*, 556 U.S. at 424 ("Congress … 'repealed the old judicial-review scheme … and instituted a new and (significantly more restrictive) one in 8 U.S.C. § 1252.' The new review system substantially limited the availability of judicial review and streamlined all challenges to a removal order into a single proceeding: the petition for review." (citation omitted)).

Matias asserts that applying the plain text of § 1252(g) and refusing to enter a stay of removal pending the resolution of his motion to reopen "would deprive a noncitizen [of] his statutory right to file a motion to reopen." But that's not true. Matias's motion to reopen has already been filed, and is currently pending before the BIA. Once the BIA decides that motion, Matias will be able to file a petition for our court to review *that* final agency action—including review of the BIA's denial of his request for a stay of removal pending its decision. *See Shaboyan*, 652 F.3d at 991. Matias has taken full advantage of his statutory rights and will continue to have access to the process guaranteed to him under the statute even if he is removed. *See Nken*, 556 U.S. at 424.

Matias also attempts to avoid § 1252(g)'s jurisdictional bar by arguing that his challenge pertains not to the Attorney General's discretionary authority, but rather to the Attorney General's allegedly unlawful decision to "remov[e] him *now*." But § 1252(g)'s jurisdictional bar on "claim[s] … arising from the decision or action by the Attorney General to … execute removal orders" does not include any temporal caveats. As the Third Circuit has observed, "the discretion to decide *whether* to execute a removal order includes the discretion to decide *when* to do it. Both are covered by the statute." *Tazu v. Att'y Gen. United States*, 975 F.3d 292, 297 (3d Cir. 2020) (emphasis in original) (citation omitted).

Similarly, the Sixth Circuit has also determined that § 1252(g) strips courts of jurisdiction in this instance. In *Hamama v. Adducci*, petitioners sought a stay while they argued that changed country conditions required reconsideration of their removal orders. 912 F.3d 869, 873 (6th Cir. 2018). The court held that, "[u]nder a plain reading of the text of the statute, the Attorney General's enforcement of long-standing removal orders falls squarely under the Attorney General's decision to execute removal orders and is not subject to judicial review." *Id.* at 874; *see also E.F.L. v. Prim*, 986 F.3d 959, 964–65 (7th. Cir. 2021) (rejecting the argument that jurisdiction remained in similar circumstances because petitioner was challenging, not "DHS's 'discretionary decisions,'" but rather "DHS's 'legal authority'").

We agree with our sister circuits. No matter how Matias frames it, his challenge is to the Attorney General's exercise of his discretion to execute Matias's removal order, which we have no jurisdiction to review. *See Camarena v. Dir., Immigr. & Customs Enf't*, 988 F.3d 1268, 1274 (11th Cir. 2021) ("[W]e do not have jurisdiction to consider 'any'

cause or claim brought by an alien arising from the government's decision to execute a removal order. If we held otherwise, any petitioner could frame his or her claim as an attack on the government's *authority* to execute a removal order rather than its *execution* of a removal order."). The district court correctly concluded that § 1252(g) deprived it of jurisdiction to hear Matias's claims.

## B.  We May Only Review Final Orders.

That we lack jurisdiction over Matias's claims is reinforced by another consideration. As explained in *Shaboyan*, we may only review final orders. 652 F.3d at 989. While Matias is asking us to review the denial of a TRO that he filed alongside a habeas petition in district court, what he fundamentally seeks is a stay of removal pending the BIA's resolution of his motion to reopen. Because Matias asks us to review an interim order and not a "'final order of removal' that may … give rise to a petition for review," we lack jurisdiction to consider his claim. *Id.* at 989–90.

In *Shaboyan*, just as in this case, the petitioner was ordered removed. Shaboyan filed a motion to reopen with the BIA, and the BIA denied her request for a stay of removal pending its consideration of that motion. Instead of filing a habeas petition in the district court seeking review of the BIA's denial of a stay like Matias did here, Shaboyan filed a petition for review with this court asking us to directly review the BIA's stay decision. *Id.* at 989. Applying § 1252, we determined that "[w]e may review only final orders of removal," and that "the BIA's interim order denying a stay of removal pending resolution of [petitioner's] motion to reopen cannot qualify as a final order of removal." *Id.* at 989, 990 (internal quotation marks omitted). In reaching that

conclusion, we recognized that the petitioner was not without recourse because the BIA's order denying the stay could be reviewed as part of its final order denying her motion to reopen. *Id.* at 991. But where a petitioner "seeks review of the denial of a stay as an independent matter…. we lack jurisdiction." *Id.*

When one door is locked, it's natural to try another. Presumably recognizing that he was foreclosed by *Shaboyan* from seeking our direct review of the BIA's denial of a stay, Matias is attempting to obtain the same relief sought by Shaboyan, just by a different route: through the district court via a habeas petition. But *Shaboyan*'s rationale applies equally to this attempt. Congress has intentionally (and unequivocally) stripped us of jurisdiction to review non-final orders. The IJ ordered Matias removed, like the petitioner in *Shaboyan*. Although he cannot contend that he is entitled to direct review of that removal order—because such review is squarely foreclosed by § 1252(g) and *Shaboyan*—Matias also cannot argue that he is seeking review of any other *final* order properly the subject of a petition for review. *Shaboyan* forecloses our review (direct or indirect) of the only thing Matias is ultimately challenging—the BIA's denial of his stay request.

## II. The Suspension Clause Does Not Preserve Judicial Review.

Recognizing the problem that § 1252 poses to his attempt to secure immediate review of the BIA's stay denial, Matias attacks that statute. He argues that the Constitution's Suspension Clause gives what § 1252 purports to take away, and thus Congress cannot have properly removed our

jurisdiction over his habeas claim.**2**   But the Suspension Clause does not preserve judicial review in this case because only an extreme and unwarranted expansion of the habeas writ would encompass Matias's requested relief.

Applying *Thuraissigiam*, the district court determined that "the scope of the writ protected by the Suspension Clause … does not extend to the type of claim at issue here." After noting that the "historic role of habeas is to secure release from custody," *Thuraissigiam*, 140 S. Ct. at 1970, the district court pointed out that "Matias … is not challenging his deportation order or any ruling that he is ineligible for relief from removal.   Instead, he is challenging the government's imminent execution of his removal order."   As a result, the district court concluded "Matias's claims do not 'call for traditional habeas relief' even under an evolving understanding of the writ, [and] applying § 1252(g) to bar his claims does not implicate the Suspension Clause" (quoting *Thuraissigiam*, 140 S. Ct. at 1970).

In *Thuraissigiam*, the Supreme Court determined that habeas relief applies to petitioners seeking release from executive detention but not to petitioners seeking to remain in the United States.   *Id.* at 1969–71.   There, the petitioner argued that Congress unconstitutionally "placed restrictions on the ability of asylum seekers to obtain review under the federal habeas statute."   *Id.* at 1963.   The Court pointed out that "[r]espondent and *amici* … have not unearthed evidence that habeas was … used [before and around the time of the adoption of the Constitution] to obtain anything like what is sought here, namely, authorization for an alien to remain in

---

2 The Suspension Clause states that "[t]he Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it."   U.S. Const., Art. I, § 9, cl. 2.

a country other than his own or to obtain administrative or judicial review leading to that result." *Id.* at 1971. The Court explained that the "core" of habeas relief is *release from* unlawful executive detention, not the right to remain in a country. *Id.* at 1975. Where "respondent did not ask to be released," but rather sought relief from removal, respondent was seeking relief that fell "outside the scope of the common-law habeas writ." *Id.* at 1969–70. The Supreme Court determined that the Suspension Clause was not triggered by § 1252(g)'s limit on habeas relief. *Id.* at 1983.

Like the petitioner in *Thuraissigiam*, Matias is not seeking "a remedy for unlawful executive detention," and his claims are thus outside of the scope of habeas relief. *Id.* at 1970–71, 1975 (citation omitted). Rather than seeking the traditional use of habeas, Matias specifically wants to *avoid* being released (into El Salvador). As the Court noted, the common law reserves habeas relief for remedies from unlawful *custody*. *Id.* at 1969. But Matias seeks to remain in the United States, even if that requires staying in custody. Matias is not using habeas in anything like the traditional sense, and therefore, as the Supreme Court held in *Thuraissigiam*, the relevant statute limiting habeas review does not violate the Suspension Clause. *Id.* at 1983; *see also Hamama*, 912 F.3d at 880 ("There is no Suspension Clause violation because the Suspension Clause can only be triggered when a petitioner is requesting relief *from custody*." (emphasis added)).

Finally, Matias points to *INS v. St. Cyr*, 533 U.S. 289 (2001), as supporting his argument that judicial intervention is constitutionally necessary. But *St. Cyr* did not expand the scope of judicial review in immigration proceedings. *Cf. Thuraissigiam*, 140 S. Ct. at 1966 (noting that "a major objective of IIRIRA" was to prevent "undue interference by

the courts"). While the Court in *St. Cyr* acknowledged that "*some* judicial intervention in deportation cases" is required, 533 U.S. at 300 (emphasis added) (citation and internal quotation marks omitted), that is a far cry from saying that judicial intervention is required at *every step*.[3] Ultimately, Matias has had (and will have) access to judicial review where Congress provided for it, such as this court's previous consideration of his petition for review, and its likely future consideration of the BIA's final decision on his motion to reopen. *Nken*, 556 U.S. at 424 (citing § 1252).

### III.    The Due Process Clause Does Not Preserve Judicial Review.

Matias also attacks the statute by arguing that § 1252(g) violates the Due Process Clause by denying review of his claims. But § 1252(g)'s limit on judicial review does not immunize his claims from review—it merely prevents him from filing a habeas petition challenging the Attorney General's discretion to execute a valid order of removal while his motion to reopen is pending. Instead, he must wait to raise the claims in a petition for review of a final order.

This should come as no surprise. Our immigration laws allow an alien to challenge an order of removal before it's

---

[3] Citing *St. Cyr* and *Thuraissigiam*, Matias also asserts that we must construe § 1252(g) narrowly to avoid a constitutional concern, and that limits on review "must overcome … [a] strong presumption in favor of judicial review" (citation omitted). But where Congress has provided a clear statement in favor of limiting judicial review, as it did in § 1252(g), we must follow the language of the statute. *See St. Cyr*, 533 U.S. at 298–99. Further, there is no "constitutional concern" here because, as explained above and in the following section, neither the Suspension Clause nor the Due Process Clause require judicial review of Matias's habeas petition.

executed and—as Matias did here—request a stay of removal during judicial proceedings reviewing the agency's removal decision. But once the removal order has withstood challenges before the IJ, the BIA, *and* our court, the government has discretion to decide *when* to remove an alien from a place he has no legal right to remain. *See, e.g.*, *Tazu*, 975 F.3d at 297. And although the alien is entitled to file a motion to reopen and seek a stay of removal from the agency until that motion is decided, our court lacks jurisdiction to intervene if the stay is denied, *Shaboyan*, 652 F.3d at 990–91, precisely because an alien's presence in the United States is not required for adjudication of the motion to reopen to take place. This statutorily provided process satisfies any demands of the Due Process Clause when an alien subject to a valid, final order of removal seeks to reopen his removal proceedings. *See Tazu*, 975 F.3d at 299–300 (concluding that because petitioner could "raise all his claims in a petition for review … [t]here is not constitutional problem with funneling them there").

Matias asks us to grant him a stay because he contends that he will be severely harmed or killed if removed to El Salvador. He urges us to balance the equity of entering a stay against the potential future harm upon removal. With respect to the latter, Matias essentially asks us to take his word for it and assume "the allegations contained in his declaration are true."

If a court could inject itself into the agency's process and force (another) stay because a removable alien—whose petition for review had already been denied by our court—newly represented to us that he would be severely injured or die when removed, all similarly situated petitioners would be incentivized to demand a stay and make similar claims to keep themselves in the country while the BIA considers their

motions to reopen.  And without records from the agency to review, we would be presented with just the petitioners' untested claims of possible future harm.  That this would become the new norm, and that courts would essentially be granting automatic stays of removal pending the BIA's consideration of motions to reopen, seems foreseeable enough.

Congress, at least, seems to have anticipated this problem in its decision to limit judicial review in a way that does not permit this court to review interim, non-final orders like motions to stay pending the resolution of motions to reopen—even if petitioners present their requests dressed as petitions for habeas relief.  Congress has already balanced the amount of process available to petitioners with the executive's prerogative to remove individuals, and this balance struck by Congress and recognized by this court in *Shaboyan* is not unreasonable.  *Cf. E.F.L.*, 986 F.3d at 964–66 (concluding that petitioner's "habeas petition falls directly in § 1252(g)'s path," notwithstanding the "seriousness" of petitioner's allegations of claimed harm resulting from removal).

Even if removed, Matias's motion would remain pending until its adjudication, and he may challenge the BIA's decision in our court once a final order has been issued.  He is not stripped of any process due him by being removed.[4]

---

[4] Matias's alternative arguments in support of jurisdiction under Article III of the Constitution and 18 U.S.C. § 1331 are without merit because the Constitution does not entitle him to any more process than what is already provided to him by statute in these circumstances.

## CONCLUSION

The district court correctly determined that it lacked jurisdiction to hear Matias's claims under § 1252(g). Neither the Suspension Clause nor the Due Process Clause preserve judicial review.  Matias's requested relief falls outside of the scope of habeas.  And the statutorily provided process satisfies any demands of the Due Process Clause. The district court's denial of the TRO is affirmed, and the district court is directed to dismiss Matias's petition.

**AFFIRMED.**

All pending motions are denied as moot.