NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0169n.06

Case No. 22-3436

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| FAIEB MAKDESION, | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | ON PETITION FOR REVIEW |
| | ) | FROM THE BOARD OF |
| MERRICK B. GARLAND, Attorney General, | ) | IMMIGRATION APPEALS |
| | ) | |
| Respondent. | ) | OPINION |
| | ) | |
| | ) | |

FILED
Apr 17, 2023
DEBORAH S. HUNT, Clerk

Before: GIBBONS, BUSH, and MATHIS, Circuit Judges.

JULIA SMITH GIBBONS, Circuit Judge. Faieb Makdesion, a native and citizen of Iraq, petitions for review of the Board of Immigration Appeals' ("BIA") decision affirming an Immigration Judge's ("IJ") determination that he does not qualify for deferral of removal under the Convention Against Torture ("CAT"). Among other aspects of the IJ's ruling, the BIA upheld the IJ's decision not to qualify two of Makdesion's declarants as experts, Rebecca Heller and Daniel Smith. While the BIA clearly stated that Heller was properly excluded based on a lack of a curriculum vitae or resume, it did not adequately explain why it upheld the exclusion of Smith. In other cases, though, the BIA has sustained appeals based on an IJ's failure to qualify Smith as an expert. Because the BIA failed to adequately explain this inconsistency, we grant the petition in part, vacate the BIA's decision, and remand for further proceedings consistent with this opinion.

I.

Faieb Makdesion came to the United States from Iraq in 1977 and has lived here since then. Makdesion has been subject to a deportation order since 1991. Like other Iraqi nationals under similar orders, Makdesion was not deported for many years because Iraq was not accepting deportees from the United States. *See Hamama v. Adduci*, 912 F.3d 869, 872 (6th Cir. 2018). After Iraq began cooperating with the United States' deportation efforts in 2017, *see id.*, Makdesion moved to reopen his proceedings seeking deferral of removal under the CAT.

In the proceedings before the IJ and BIA, Makdesion argued that, if deported, he would face torture based on "his identity as a Chaldean Christian who fled Iraq and did not return to his military duty, his status as a westernized American since 1977, his convictions for multiple serious narcotics felonies, his lack of current Iraqi documents, and the complete absence of any family members left in Iraq." CA6 R. 11, Pet'r Br., at 33. To establish that he would be subject to torture in Iraq, Makdesion offered the declarations of three proposed experts—Mark Lattimer, Rebecca Heller, and Daniel Smith—stating that individuals with Makdesion's characteristics are at risk of torture by militias within Iraq and would have difficulty relocating to safer regions of the country. Smith's declaration also develops the theory that Iraqi security forces or affiliated militias would likely detain Makdesion at the airport and then subject him to interrogation techniques amounting to torture. The government likewise offered the declarations of three proposed experts—Douglas Ollivant, Denise Natali, and Michael Rubin—opining that country conditions in Iraq have improved since the defeat of Islamic State of Iraq and Syria ("ISIS") and that individuals with Makdesion's characteristics no longer face a substantial risk of torture.

The IJ admitted the declarations of all three of the government's proposed experts. As for Makdesion's experts, the IJ admitted Lattimer's expert declaration without objection from the

government. However, the IJ declined to qualify Smith as an expert witness and instead admitted his declaration as that of a percipient fact witness. The IJ also excluded Heller's declaration entirely because she did not submit a curriculum vitae apart from the statement of qualifications in her declaration.

Based on the admitted declarations, the testimony of Makdesion and his brother, and other sources on country conditions in Iraq including the 2016 Human Rights Report and 2016 International Religious Freedom Report, the IJ determined that Makdesion had not established by a preponderance of the evidence that he would suffer torture if deported to Iraq.

Makdesion appealed to the BIA. Among other issues, Makdesion argued that the IJ erred when he rejected Heller and Smith as experts, pointing to a previous BIA decision that sustained an appeal based on the same issue. While his appeal was pending, Makdesion also moved to remand based on changed country conditions. The BIA affirmed the IJ's decision and declined to remand Makdesion's case to the IJ.

Makdesion filed a timely petition for review. Makdesion argues that the IJ and BIA erred in their treatment of his expert witnesses and in their ultimate conclusion as to his likelihood of torture if deported to Iraq. Makdesion also argues that the BIA erred in denying his motion to remand based on changed country conditions.

## II.

When the BIA issues a written opinion, this court reviews the decision of the BIA. *Umana-Ramos v. Holder*, 724 F.3d 667, 670 (6th Cir. 2013). To the extent that the BIA adopts the IJ's reasoning, this court also reviews the IJ's decision. *Id.* (citing *Hachem v. Holder*, 656 F.3d 430, 437 (6th Cir. 2011)).

Pursuant to the Administrative Procedure Act, this court "shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A); *Vasha v. Gonzales*, 410 F.3d 863, 876 (6th Cir. 2005).

III.

When reviewing the BIA's discretionary determinations for legal error, we "look only at the basis articulated in the decision and we may not assume that the Board considered factors that it failed to mention in its opinion." *Preçetaj v. Sessions*, 907 F.3d 453, 458 (6th Cir. 2018) (cleaned up) (quoting *Daneshvar v. Ashcroft*, 355 F.3d 615, 626 (6th Cir. 2004)).  Consequently, when the BIA inadequately explains its decision to the point where we cannot determine whether the BIA abused its discretion or acted arbitrarily and capriciously, we must remand to the BIA to explain its reasoning in the first instance.  *See id.* at 458-60 (remanding for BIA to explain why it denied motion to reopen proceedings); *Marqus v. Barr*, 968 F.3d 583, 593-94 (6th Cir. 2020) (same); *Yousif v. Lynch*, 796 F.3d 622, 635-636 (6th Cir. 2015) (remanding for consideration whether asylum applicant's false statements were material so as to support frivolousness finding).

Although the BIA is not bound by its unpublished cases, 8 C.F.R. § 1003.1(g), unexplained inconsistencies in BIA determinations regarding the same issue can support a claim that the BIA abused its discretion or acted arbitrarily and capriciously.  *See Zhang v. Gonzales*, 452 F.3d 167, 173 (2d Cir. 2006) ("apparently inconsistent decisions" raised "concern about the operation of" the "fundamental principle of justice" that "similarly situated individuals be treated similarly") (citations and internal quotation marks omitted).

In *Kada v. Barr*, 946 F.3d 960, 968 (6th Cir. 2020), we remanded to the BIA based on a claim of ineffective assistance of counsel.  We relied in part on the inconsistency between the

BIA's treatment of the petitioner's claim and other BIA decisions granting relief based on similar claims. *See id.* at 966-68. Similarly, in *Hanna v. Mukasey*, 290 F. App'x 867 (6th Cir. 2008), we remanded the BIA's denial of the petitioner's motion to reopen based on changed country conditions in Iraq, based primarily on the BIA's failure to explain why it had granted two similar motions to reopen based on changed conditions in Iraq over a largely overlapping time period. *Id.* at 873. We stated that we "[could not] engage in meaningful review of the BIA's decision if the Board neglects to give an adequate articulation of why it granted a motion to reopen in two cases, but denied it in a third that appears to be indistinguishable from the prior two." *Id.*

Here, the BIA upheld the IJ's determinations as to Smith and Heller based on these grounds:

> The applicant also argues that because the Board has previously determined Daniel Smith and Rebecca Heller to be expert witnesses in other cases, it therefore should do so in this case. However, unpublished Board decisions have no controlling or precedential effect on other cases. Further, here, the applicant did not submit the CV or resume of Rebecca Heller, and it is unclear what evidence was presented in other cases to demonstrate that Daniel Smith was qualified as an expert witness. As such, we are not persuaded that any prior determination regarding Daniel Smith and Rebecca Heller's qualifications as experts establishes that they are entitled to be qualified as expert witnesses in this case.

CA6 R. 8-2, BIA Dec., Admin. R. 5 (internal citations omitted). One of the reasons given for exclusion of Heller—the applicant's failure to submit Heller's curriculum vitae or resume—is a sufficient basis under the BIA's rules to exclude her as an expert, given that the Immigration Court Practice Manual requires petitioners to include proposed experts' CV or resume in the record. Immigration Court Practice Manual ¶ 3.3(g) (Nov. 14, 2022); *see J-G-T-*, 28 I. & N. Dec. 97, 102 (BIA Sept. 25, 2020). But, concerning Smith (whose curriculum vitae or resume apparently was provided), the BIA's discussion of his qualifications is not "adequate" to permit this court to "engage in a meaningful review" of whether the BIA acted arbitrarily and capriciously. *See*

*Hanna*, 290 F. App'x at 873. Instead, the BIA's explanation admits that the BIA did not rely on any distinction between this case and others that would support the different outcomes.

Aside from reciting that unpublished decisions are not binding, the BIA's only explanation for the inconsistent outcomes is that "it is unclear" whether the disparate treatment of Smith resulted from any differences in the qualifications he submitted. CA6 R. 8-2, BIA Dec., Admin. R. 5. Such a plea of ignorance cannot reasonably be characterized as an "explanation," let alone one that is "adequate" to allow for "meaningful review." *Hanna*, 290 F. App'x at 873. That is especially so where the BIA gives no indication why it could not have reviewed the records in other cases to determine whether they differed materially from this case with respect to the credentials Smith submitted.

To be sure, we have sometimes affirmed the BIA with respect to comparable issues in unpublished cases. *See Solaka v. Wilkinson*, 844 F. App'x 797, 800-01 (6th Cir. 2021); *Al-Koorwi v. Barr*, 837 F. App'x 323, 332 (6th Cir. 2020); *Abdulahad v. Barr*, 838 F. App'x 126, 134 (6th Cir. 2020); *Faso v. Barr*, 823 F. App'x 321, 324-25 (6th Cir. 2020); *Nissan v. Barr*, 788 F. App'x 365, 367 (6th Cir. 2019). Some of those cases are distinguishable. *See Abdulahad*, 838 F. App'x at 134-35 (attorney had failed to object to IJ's exclusion of Heller); *Al-Koorwi,* 837 F. App'x at 332 (petitioner "just charge[d] the BIA with error without any reasoning or application of law to fact"); *Nissan*, 788 F. App'x at 367 (BIA had determined that "the omitted testimony was cumulative and the omission non-prejudicial"). In any event, we believe that in this case, remand rather than affirmance best comports with the principles articulated in binding published case law.

We cannot affirm the BIA on the ground that there might be some distinction between Smith's qualifications in this case and what may have been presented in other cases, because the BIA itself has expressly stated its uncertainty as to whether that is the case. *Cf. Al-Koorwi*, 837 F.

App'x at 332 ("Cases that seem similar now may not have looked that way to the IJs or BIA members who decided them.") (cleaned up) (quoting *Nissan*, 788 F. App'x at 367); *Faso*, 823 F. App'x at 325 ("we do not know why the IJ in the third case refused to qualify Heller and Smith as experts"). We also cannot affirm on the ground that some degree of inconsistency is inevitable. *Cf. Nissan*, 788 F. App'x at 367 ("one inconsistent precedent doesn't make a decision arbitrary and capricious") (quoting *NLRB v. Sunnyland Packing Co.*, 557 F.2d 1157, 1160 (5th Cir. 1977)); *Al-Koorwi*, 837 F. App'x at 332 ("some degree of inconsistency is unavoidable") (quoting *id.*) (internal quotation marks omitted); *Abdulahad*, 838 F. App'x at 135 (same two quotes); *Faso*, 823 F. App'x at 325 (same). At issue here are not merely inconsistent outcomes, but rather the BIA's failure to *explain* such outcomes in cases that "appear[] to be indistinguishable." *Hanna*, 290 F. App'x at 873. In any event, there is more than one BIA decision remanding to an IJ on the issue of Smith's expert qualifications. *See Solaka*, 844 F. App'x at 801 (mentioning six such BIA decisions, at least one of which appear to have been outright reversals); *see also Shakkuri v. Barr*, 780 F. App'x 286, 294 n.3 (6th Cir. 2019) (noting "troublingly well-founded" claim of inconsistent treatment of Heller's and Smith's expert status based on five BIA decisions remanding to IJs on the issue).[1]

Because the BIA's failure to explain its apparently inconsistent treatment of Smith's expert qualifications requires remand, and because the BIA's resolution of this issue might affect the

---

[1] It is impossible to know how many similar BIA decisions there are because the BIA's unpublished decisions are not normally accessible to non-parties to the case. *Ishac v. Barr*, 775 F. App'x 782, 793 n.8 ("As it turns out, most unpublished decisions of the BIA do not appear readily available at all. It seems that the reason [the petitioner] was able to point to the four decisions we have discussed is that his current lawyer . . . also represented the petitioners in those cases.").

record on which we would assess Makdesion's other arguments, we need not now consider the other issues raised by Makdesion's petition.

IV.

For the reasons discussed above, we grant Makdesion's petition in part, vacate the BIA's decision, and remand to the BIA with instructions to explain its apparently inconsistent treatment of Daniel Smith as an expert.